UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SCOTT SMITH, | Case No. 17-CV-1866 (PJS/HB) |
| Plaintiff, | |
| v. | ORDER |
| RW'S BIERSTUBE, INC. and YANZ PROPERTIES, LLC, | |
| Defendants. | |

Padraigin Browne, BROWNE LAW LLC, for plaintiff.

Edward P. Sheu, BEST & FLANAGAN LLP, for defendants.

Plaintiff Scott Smith (who uses a wheelchair) brought this action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., alleging that he encountered architectural barriers while visiting Bierstube Bowl & Grill ("Bierstube"), a bowling alley and restaurant operated by defendants. In his original complaint, Smith alleged that Bierstube's parking lot violated the ADA in the following ways: (1) it lacked a sufficient number of accessible parking spaces; (2) none of the accessible spaces were marked with signs; (3) one of the accessible spaces lacked an accessible route to the sidewalk surrounding the building; and (4) one of the accessible spaces lacked an adjacent access aisle. Compl. ¶¶ 14-16, 23.

Bierstube moved to dismiss the complaint, arguing that the alleged problems had been remedied and that Smith's claims were therefore moot. ECF Nos. 31, 34. In response, Smith filed an amended complaint alleging additional problems with the parking lot. ECF No. 61. Bierstube withdrew its motion to dismiss, and the parties engaged in discovery.

This matter is before the Court on the parties' cross-motions for summary judgment and motions to exclude expert testimony. For the reasons that follow, the Court grants Bierstube's summary-judgment motion in part and dismisses this case without prejudice for lack of jurisdiction.

## I. BACKGROUND

Smith lives in Burnsville, Minnesota, a large suburb of the Twin Cities. Smith Dep. 13. Bierstube is located in Red Wing, Minnesota, a small town that is about 50 miles from Burnsville. Smith Dep. 39. Smith says that he travels through Red Wing several times per year, including when he visits his brother in Stockton, Minnesota. Smith Decl. ¶ 2. Stockton is about 110 miles from Burnsville and about 60 miles from Red Wing.

On May 25, 2017, Smith was driven to Red Wing and then to nearby Winona by Peter Hansmeier, a legal assistant employed by Smith's attorney, Padraigin Browne. Smith Dep. 31; Hansmeier Dep. 9-10, 33-34. Browne has represented Smith in roughly

100 lawsuits challenging architectural barriers under the ADA. Peter Hansmeier is the brother of Paul Hansmeier, who is Browne's husband, and who represented Smith in numerous ADA actions until he was disbarred in connection with his operation of a "porn-trolling" scheme.[1]

Peter Hansmeier did not drive Smith to various businesses in Red Wing and Winona on May 25, 2017, because Smith intended to patronize those businesses. Smith Dep. 39. Instead, Hansmeier and Smith were hunting for lawsuits. Hansmeier drove Smith to various businesses so that Smith could observe whether each of the businesses was ADA compliant. All told, Smith initiated 13 lawsuits against businesses in Red Wing and Winona based on his May 25 drive with Hansmeier. Smith Dep. 41 (referring to "ten other places" that he sued in addition to the three for which he was being deposed).

Among the businesses that Smith visited on May 25—and eventually sued—was Bierstube. Hansmeier drove Smith into the Bierstube parking lot at around 10:00 am, and Smith observed various alleged architectural barriers in the parking lot. Smith Dep. 128. Smith did not know if Bierstube was open, and he had not checked its hours of operation before going there. Smith Dep. 39-40. Again, Smith did not care whether

---

[1] Paul Hansmeier ultimately pleaded guilty to fraud and money laundering and was sentenced to 168 months in prison. *See United States v. Paul R. Hansmeier*, Case No. 16-CR-0334 (JNE/KMM).

Bierstube or the other businesses were open, as he had no interest in patronizing them on that day.

As noted, Smith alleged in his initial complaint that there were an insufficient number of accessible parking spots in the Bierstube parking lot. But as is clear from the photographs that Hansmeier and Smith took on May 25, all of the accessible spots in the Bierstube parking lot were available at the time of their visit, and all of them were easy to identify. Smith Decl. ¶ 6 & Ex. A.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

*B. Standing*

Bierstube argues that Smith lacks standing to seek injunctive relief, which is the only kind of relief available to him under Title III of the ADA. 42 U.S.C. § 12188(a); *Disability Support Alliance v. Heartwood Enters., LLC*, 885 F.3d 543, 546 (8th Cir. 2018). "To demonstrate Article III standing, a plaintiff must prove (1) 'injury in fact,' (2) a 'causal connection between the injury and the conduct complained of,' and (3) that the injury will be 'redressed by a favorable decision.'" *Id.* at 545 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Standing is determined as of the commencement of the lawsuit."[2] *Id.*

Beginning with *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000), the Eighth Circuit has issued a number of decisions addressing the circumstances under which a plaintiff has standing to bring an action for an alleged violation of Title III of the ADA. In *Steger*, five plaintiffs sued over alleged barriers in a building containing retail and office space. *Id.* at 891. So far as the record revealed, at the time the complaint was filed, four of the five plaintiffs had never set foot in the building. *Id.* at 891-93. The

---

[2]Arguably, standing should be determined as of January 17, 2018, when Smith filed an amended complaint. *See* ECF No. 61; *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (discussing standing with reference to the time that the plaintiffs filed a second amended complaint). In this case, however, it makes no difference; although Smith offers evidence that he visited Bierstube a second time, he did not do so until July 2018, well after he filed the amended complaint. Smith Decl. ¶ 7. The Court therefore focuses its standing inquiry on Smith's May 2017 visit.

Eighth Circuit held that those four lacked standing. *Id.* at 893. The remaining plaintiff (a blind man) had visited the building, and while in the building had been unable to access the restroom due to the lack of ADA-compliant signage. *Id.* at 891-92. By the time that the plaintiff sought injunctive relief, however, the problem had been remedied. *Id.* at 892. Nevertheless, the Eighth Circuit held that the plaintiff had standing to seek remediation of other barriers in the building that would affect blind people, even though he had not personally encountered those barriers. *Id.* at 893-94.

Eighteen years after *Steger*, the Eighth Circuit again analyzed Title III standing in *Disability Support Alliance v. Heartwood Enterprises, LLC*, 885 F.3d 543 (8th Cir. 2018) ("*Heartwood*"). In *Heartwood*, the plaintiff was driven to a small, locked office building whose tenants met with clients by appointment only. *Id.* at 545. The plaintiff did not have an appointment. *Id.* From the car, he saw that there were barriers that would prevent him from reaching the front door; accordingly, he left without attempting to access the building. *Id.* In response to the defendant's summary-judgment motion, the plaintiff submitted a declaration stating that he had "an extremely strong interest in revisiting the [building] once it attempts to bring itself into compliance with the law in order to determine that [the defendant] is no longer discriminating against me and other people with disabilities." *Id.* at 546. The plaintiff had also testified at his deposition that he was interested in seeing a doctor with an office in the building

because that doctor offered therapies that could be helpful for the plaintiff's condition. *Id.*

The Eighth Circuit held that, to have standing to bring a Title III action, a plaintiff must prove that architectural barriers caused him "actual injury" at the time that he commenced the action *and* that he would visit the building in the "imminent future" but for those barriers. *Id.* (citation and quotation marks omitted). There was evidence in the record suggesting that the plaintiff had not suffered an injury; in particular, there was evidence that the plaintiff's "professed intentions to consult Dr. Raich on December 3, 2014, and to visit Heartwood Offices in the imminent future are not credible." *Id.* But because a court must credit the non-moving party's evidence at summary judgment, the Eighth Circuit held that the district court had correctly denied summary judgment on the issue of standing (although the district court went on to grant summary judgment on the merits). *Id.* at 546-47. The Eighth Circuit emphasized that the denial of summary judgment did not establish that the plaintiff had standing; instead, had the case proceeded to trial, the plaintiff would have had to prove standing. *Id.* at 547.

The Eighth Circuit next addressed Title III standing in *Davis v. Anthony, Inc.*, 886 F.3d 674 (8th Cir. 2018) ("*Anthony*"). In *Anthony*, the plaintiff alleged that she was unable to visit a restaurant due to architectural barriers in the parking lot. *Id.* at 676.

The defendant submitted evidence that it had removed the barriers, and the district court dismissed the case as moot. *Id.* On appeal, the plaintiff argued that, under *Steger*, she was entitled to discovery to determine if there were architectural barriers inside the restaurant. *Id.* at 677-78. *Anthony* rejected this argument, explaining that *Steger* "expands standing only when the plaintiff encounters a violation in a building" and that, as a result, the plaintiff could not "use the violation encountered in the parking space to expand her standing to sue for unencountered violations inside the steakhouse that never injured her." *Id.* The court also expressly declined to adopt the "deterrent effect doctrine," under which a disabled individual suffers an Article III injury "'if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.'" *Id.* at 678 (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011)).

The Eighth Circuit again addressed standing in *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007 (8th Cir. 2018), albeit in the context of claims under the Minnesota Human Rights Act ("MHRA"). In *Hillesheim*, the plaintiff identified three barriers in a store parking lot: (1) there were no signs marking the two accessible parking spots; (2) one of the two accessible spots lacked an adjacent access aisle; and (3) there was a garbage can near the top of the curb ramp leading to the store. *Id.* at 1009. Because the store remedied the problems after the plaintiff filed suit, the plaintiff conceded that his

ADA claims were moot, but he continued to press his claims under the MHRA. *Id.* at 1009-10. The district court granted summary judgment to the store, finding that the plaintiff had suffered no injury and therefore lacked standing. *Id.* at 1010. The Eighth Circuit agreed that the plaintiff lacked standing with respect to two of the three violations, namely, the signage and access-aisle defects. As the Eighth Circuit explained:

> On the access-aisle and vertical-signage claims, [the plaintiff's] declaration did little more than describe the alleged violations, other than stating that he was deterred from visiting the store in the future. It did not explain how the lack of an access aisle or insufficient vertical signage injured him. It made no mention, for example, of whether he had difficulty identifying which spots were handicap accessible or even whether the alleged defects caused him to leave without entering the store. Alleging bare violations of the ADA without evidence of an actual injury is insufficient to establish Article III standing.

*Id.* (footnote omitted). The Eighth Circuit again rejected the argument that being deterred from visiting in the future is sufficient, by itself, to confer standing. *Id.* n.1.

With respect to the placement of the garbage can, however, the Eighth Circuit found that the plaintiff had offered sufficient evidence of an injury:

> In contrast to the other claims, Hillesheim's declaration connected the placement of the garbage can to his decision to leave. It stated that he could not safely navigate the ramp without risking injury because the garbage can blocked his path of travel and trying to maneuver around it could have caused his wheelchair to tip over. By offering specific

> evidence that the allegedly dangerous circumstances caused
> him not to enter the store, Hillesheim did enough to
> establish an injury-in-fact.

*Id.* at 1011.

Finally, and most recently, the Eighth Circuit addressed Title III standing in *Davis v. Morris-Walker, Ltd.*, 922 F.3d 868 (8th Cir. 2019) ("*Morris-Walker*"). In *Morris-Walker*, the plaintiff alleged that the defendant restaurant lacked a sufficient number of accessible parking spaces in a separate overflow parking lot and sought to amend her complaint to add allegations of violations inside the restaurant. *Id.* at 870-71. The Eighth Circuit held that the plaintiff lacked standing to sue for alleged violations in the overflow lot because she never claimed that she had entered the overflow lot or sought to park there. *Id.* at 871. The Eighth Circuit further held that she lacked standing to sue for alleged violations in the restaurant because she had never entered the restaurant and therefore never encountered any of the alleged violations. *Id.* at 871-72. This was true even though the plaintiff alleged that she had detailed knowledge of the violations and intended to return. *Id.*

From these cases one can glean a couple of general rules regarding standing in Title III cases. First, the Eighth Circuit has made clear that knowledge of a barrier, coupled with an intent to visit the establishment in the future, is insufficient to establish standing. *See Morris-Walker*, 922 F.3d at 871-72; *Hillesheim*, 900 F.3d at 1010 & n.1. At

first glance, this may seem inconsistent with *Steger*, in which the Eighth Circuit stated that "[a]lthough plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, *see* 42 U.S.C. § 12188(a)(1), they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers."  *Steger*, 228 F.3d at 892.

At the time of the filing of the complaint in *Steger*, however, none of the four plaintiffs who were dismissed from the action for lack of standing had ever been inside the building, and none of them knew whether the building was ADA-compliant.  *Id.* at 891, 893.  *Steger* therefore did not have to resolve the question of whether a plaintiff who knows of a barrier in a building, but who has never actually visited the building, has standing to sue to remove the barrier.  By contrast, when the Eighth Circuit was confronted with that question in *Morris-Walker*, it squarely held that the plaintiff's knowledge of the barrier and intent to visit the building in the future were insufficient.  *Morris-Walker*, 922 F.3d at 871-72; *cf. Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").  It is therefore clear that a plaintiff must go to the establishment and encounter a barrier in order to have standing to bring a Title III action against the establishment.

Second, the Eighth Circuit cases make clear that, at least in the context of an exterior barrier (such as a non-compliant parking lot), visiting an establishment and encountering an exterior architectural barrier are not sufficient to confer standing to bring a Title III claim regarding the exterior barrier. *See Hillesheim*, 900 F.3d at 1010 (rejecting standing where the plaintiff failed to explain how barriers that he had observed affected him); *Heartwood*, 885 F.3d at 547 (holding that the plaintiff, who had observed exterior barriers, had offered sufficient evidence to establish standing for purposes of summary judgment, but leaving open the question whether the plaintiff could establish standing at trial). Instead, to establish "actual injury" in this context, a plaintiff must intend to enter or otherwise access the business but be hindered from doing so by the architectural barrier. *See Hillesheim*, 900 F.3d at 1011 (evidence that a third barrier had caused the plaintiff not to enter the store was sufficient evidence of actual injury).[3]

---

[3]*Hillesheim* (which held that the plaintiff had standing with respect to only one of three barriers) is in some tension with *Steger* (which held that a plaintiff who has encountered one barrier has standing to challenge all barriers that could potentially affect him). This tension could be reconciled in various ways. Perhaps *Hillesheim* is only applicable to parking lots and other exterior barriers and not to interior barriers. Or perhaps the distinction lies in the nature of the relief being sought; in *Hillesheim*, the plaintiff could only have been seeking monetary damages, whereas in *Steger* the plaintiff was (apparently) only seeking injunctive relief. Or, perhaps, *Hillesheim* found it significant that the plaintiff had actually encountered all three barriers but could not produce evidence that two of the three had affected him. At any rate, the Court need not attempt to resolve this tension because Smith cannot show that he was injured by
(continued...)

This does not mean that the plaintiff must risk injury or embarrassment by making a physical attempt to overcome the barrier. But it does mean that the barrier must have actually deterred or thwarted the plaintiff from entering the business. This, in turn, necessarily means that the plaintiff must have *intended* to enter the business at the time of his visit, because (as noted) it is clear that merely visiting a site and observing a barrier is not sufficient to establish standing. Without an intent to enter or otherwise access the business, the plaintiff is in the same position as a plaintiff who alleges merely that she knows of a barrier and, as a result, is deterred from visiting in the future—a theory of standing that the Eighth Circuit has repeatedly declined to adopt.

Applying these principles to this case, Smith clearly fails to offer sufficient evidence of actual injury to establish standing. In his deposition, Smith agreed that when Hansmeier drove him to Red Wing, Smith was not "actually looking to patronize the premises," but rather was simply "testing it to see if it's ADA compliant[.]" Smith Dep. 39. Smith's admission that he did not intend to go inside Bierstube is further bolstered by his admissions that he did not check Bierstube's hours of operation before undertaking the 50-mile drive to Red Wing and does not know whether it was open on the day of his visit. Smith Dep. 39-40. Because Smith did not intend to go into

---

[3](...continued)
any of the barriers that he observed during his May 2017 visit.

Bierstube, but simply traveled to Bierstube to check if there were architectural barriers in its parking lot, he did not suffer actual injury.[4]

That resolves the issue of standing. The Court further notes, however, that even if Smith had offered evidence showing that he intended to enter Bierstube during his May 2017 visit, Smith still would not have standing because he failed to offer evidence that any of the barriers that he observed actually deterred him from entering the restaurant on that date.[5] Smith's own photographs from that day show that all three of Bierstube's accessible parking spots were easy to identify and available at the time of his visit. Smith Decl. ¶ 6 & Ex. A. Although his declaration describes the general problems that lack of signage and inadequate parking can cause for disabled people, Smith does not claim that *he* had difficulty identifying the accessible spots during his May 2017 visit—and, given that all three spots were open, Smith obviously does not claim that no accessible parking was available to him. *See also* Smith Dep. 77 (admitting that the accessible spots were not all filled on May 25, 2017). True, Smith alleges that

---

[4]The Court notes that, even if Smith had offered sufficient evidence to survive summary judgment, there is ample evidence in the record from which a factfinder could conclude that Smith suffered no actual injury during his May 2017 visit. As a result, the Court could not possibly grant summary judgment in Smith's favor; instead, Smith would have to establish standing at trial.

[5]As noted, Smith has filed an amended complaint alleging additional violations. Smith did not identify these alleged violations in his original complaint, however, and he cites no evidence that he personally observed or even knew of them on May 25, 2017. As a result, they cannot have caused him any injury on that date.

one of the accessible parking spaces lacked an accessible ramp and an adjacent access aisle.⁶ But there were two other accessible spots that were available and that were compliant with the ADA (except for the lack of proper vertical signage, which, again, did not prevent Smith from identifying the spots as accessible).

In sum, Smith did not suffer actual injury when he visited Bierstube on May 25, 2017 for two reasons: First, he had no intent to enter Bierstube. Second, even if he had intended to enter Bierstube, none of the alleged ADA violations would have deterred him from doing so. Each of these reasons is sufficient, in and of itself, to establish that Smith does not have standing to pursue this lawsuit.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for summary judgment and to exclude expert testimony [ECF No. 96] is GRANTED IN PART and DENIED AS MOOT IN PART.

   a. The motion is GRANTED as to the issue of standing.

   b. The motion is DENIED AS MOOT in all other respects.

2. Plaintiff's motion for summary judgment [ECF No. 113] is DENIED.

---

⁶Smith's declaration indicates that it was the same parking spot that had both of these defects. Smith Decl. ¶ 13.

3. Plaintiff's amended complaint [ECF No. 61] is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 23, 2019                    s/Patrick J. Schiltz
                                        Patrick J. Schiltz
                                        United States District Judge